# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3715 | **DATE** | 1/21/2004 |
| **CASE TITLE** | Cox for U.S. Senate Committee, Inc. v. Federal Election Commission | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiffs' motion for summary judgment (14) is denied. Defendant's motion for summary judgment (16) is granted. The parties will bear their own attorneys' fees and costs. The parties will bear their own attorneys' fees and costs. Memorandum and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | JAN 2 2 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 28 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | JAN 2 2 2004 | |
| SLB | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

U.S. DISTRICT COURT
CLERK

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DOCKETED

JAN 2 2 2004

COX FOR U.S. SENATE COMMITTEE, INC. )
and JOHN H. COX, )
                 Plaintiffs, )
                 )     Case No. 03 C 3715
      v. )
                 )     George W. Lindberg
FEDERAL ELECTION COMMISSION, )     Senior United States District Judge
                 )
               Defendant. )

## MEMORANDUM AND ORDER

On May 30, 2003, Plaintiffs Cox for U.S. Senate Committee, Inc. ("Committee") and John H. Cox ("Cox") (collectively, "Plaintiffs") filed their four-count complaint for declaratory and injunctive relief. Plaintiffs' complaint, *inter alia*, asks this Court to: (1) declare that the penalties set forth in 11 C.F.R. § 111.44 are unconstitutional, (2) enjoin Defendant Federal Election Commission from enforcing its April 30, 2003 Final Determination and its assessment of a civil money penalty in the amount of $22,150.00, and (3) set aside Defendant's April 30, 2003 Final Determination and vacate Defendant's assessment of the aforementioned penalty.

Plaintiffs and Defendant have filed cross-motions for summary judgment. Plaintiffs' motion is hereby denied and Defendant's motion is hereby granted.

*Legal Standards – Summary Judgment*

It is well-established that "[c]ross-motions for summary judgment are the standard method for presenting a case to a district court for decision on the record compiled by the administrative tribunal that the court is reviewing." *Dale M. v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist.*, 237 F.3d 813, 816 (7th Cir. 2001) (citations omitted). This Court will grant summary judgment when "there is no genuine issue as to any material fact and...the moving party

28

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *In re Chambers*, 348 F.3d 650, 654 (7th Cir. 2003) ("All facts and inferences are viewed in the light most favorable to each nonmoving party....") (citation omitted).

*Factual and Procedural Background*

Although the parties' statements of material facts are quite similar, each statement will be presented individually so as to avoid confusion as to whether the parties have established that summary judgment is appropriate in this case.

## I.      Statement of Material Facts Supporting Plaintiffs' Motion

Cox was a candidate for election to the United States Senate in 2002, and the Committee was the principal campaign committee supporting his candidacy. At all relevant times, Cox served as Treasurer of the Committee. Defendant is an independent, federal administrative agency responsible for enforcing the Federal Election Campaign Act ("FECA") and investigating violations of the same.

Cox's candidacy was supported primarily by Cox's personal loans to the Committee. Cox publicly stated on several occasions that he had pledged one million dollars of his own funds to his campaign. In actuality, he lent in excess of one million dollars to the Committee. Cox's loans were made over a period of one year and at no time did Cox attempt to conceal or hide his personal contributions.

From February 28, 2002 to March 16, 2002, the Committee was required to report any campaign contribution in excess of $1,000.00 within forty-eight hours of the Committee's receipt of the same ("48-Hour Reporting Period"). Cox delegated responsibility for filing reports during the 48-Hour Reporting Period to a Committee employee, Cheryl Warren. Two loans from

Cox to the Committee, one for $75,000.00 and another for $144,507.47, were not reported as required by Defendant even though they were received during the 48-Hour Reporting Period. These omissions were inadvertent in nature and neither of the loans was extraordinary or unusual. Moreover, both loans were subsequently reported by the Committee in its post-election April 2002 Quarterly Report.

The $75,000.00 loan was received by the Committee in the form of a check on March 5, 2002. Although Warren received the check from Cox, she was uncertain as to whether the loan needed to be reported during the 48-Hour Reporting Period. Warren did not take steps to determine whether such reporting was required and failed to bring the issue to Cox's attention. Instead, she spent the better part of March 6, 2002 consoling a fellow Committee employee and helping him to find temporary lodging after his apartment had burned in a fire earlier that day.

The $144,507.47 loan was wired directly to the Committee's bank account on March 12, 2002. The wire confirmation was mailed directly to the Committee and never provided to Warren. As such, Warren overlooked and, therefore, did not report the March 12, 2002 loan. Cox was unaware than this loan was not reported within forty-eight hours of receipt by the Committee.

On September 18, 2002, Defendant found reason to believe that Plaintiffs violated 2 U.S.C. § 434(a)(6)(A)[1] for failing to properly report three contributions of $1,000.00 or more that

---

[1]2 U.S.C. § 434(a)(6)(A) provides:

> The principal campaign committee of a candidate shall notify the Secretary or the Commission, and the Secretary of State, as appropriate, in writing, of any contribution of $1,000 or more received by any authorized committee of such candidate after the 20th day, but more than 48 hours before, any election. This notification shall be made within 48 hours after the receipt of such contribution and shall include the name of the candidate and the

were received during the 48-Hour Reporting Period. The three unreported contributions totaled

$224,507.47. Two of these contributions were the above-described loans from Cox to the

Committee. Based on the schedule of civil money penalties set forth in 11 C.F.R. § 111.44[2]

("Schedule"), a penalty of $22,750.00 ($100.00 for each non-filed contribution, plus 10% of the

dollar amount of the contributions not timely reported) was calculated.

Plaintiffs responded to Defendant's September 18, 2002 finding on October 25, 2002,

arguing, *inter alia*, that (1) the Committee's failure to timely report the loans was inadvertent and

(2) the Schedule was excessive and punitive. Thereafter, Defendant's Office of Administrative

Review recommended on March 27, 2003 that a final determination be made that Plaintiffs violated

2 U.S.C. § 434(a)(6)(A) and the civil money penalty be reduced from $22,750.00 to $22,150.00 to

reflect the two unreported Cox loans totaling $219,507.47. The Office of Administrative Review

concluded that Plaintiffs' challenges did not fall within the list of defenses outlined in 11 C.F.R. §

---

office sought by the candidate, the identification of the contributor, and the date of receipt and amount of the contribution.

[2]11 C.F.R. § 111.44 provides, in relevant part:

What is the schedule of penalties for 48-hour notices that are not filed or are filed late?

(a)     If the respondent fails to file timely a notice regarding contribution(s) received after the 20th day but more than 48 hours before the election as required under 2 U.S.C. § 434(a)(6), the civil money penalty will be calculated as follows:

(1)     Civil money penalty = $100 + (.10 x amount of the contribution(s) not timely reported).

(2)     The civil money penalty calculated in paragraph (a)(1) of this section shall be increased by twenty-five percent (25%) for each prior violation.

111.35(b), and, therefore, the statutory penalty as calculated in 11 C.F.R. § 111.44 should be assessed.

Plaintiffs responded to the March 27, 2003 recommendation on April 10, 2003. On April 29, 2003, Defendant adopted the Office of Administrative Review's March 27, 2003 recommendation, made a final determination that Plaintiffs violated 2 U.S.C. § 434(a)(6)(A), and assessed a civil money penalty of $22,150.00.

Plaintiffs filed their complaint on May 30, 2003, within 30 days of Plaintiffs' receipt of Defendant's notice of adverse determination.

## II.  Statement of Material Facts Supporting Defendant's Motion

The facts supporting Defendant's motion are nearly identical to those discussed with respect to Plaintiffs' motion. Cox was an Illinois candidate for the United States Senate in 2002 and the Committee was his principal campaign committee. Cox served as Treasurer of the Committee at all relevant times. Defendant is an independent federal agency with exclusive jurisdiction over the administration, interpretation, and civil enforcement of the FECA. In particular, Defendant is authorized to assess civil money penalties for certain violations of the reporting provisions of the FECA.

On February 11, 2002, Defendant sent a Primary Election Report Notice to Plaintiffs which explained that campaign contributions of $1,000.00 or more received during the 48-Hour Reporting Period must be properly reported within forty-eight hours of the Committee's receipt of the same. The notice also emphasized that contributions of $1,000.00 or more included personal loans from the candidate.

On March 5, 2002, Cox loaned the Committee $75,000.00 by giving a check in that

amount to Warren. However, Warren did not determine whether the loan needed to be reported, and, thus, it was inadvertently not reported within forty-eight hours of its receipt. On March 12, 2002, Cox loaned the Committee $144,507.47 by wiring the funds directly into the Committee's bank account. Warren was not notified of this loan and, therefore, it went similarly unreported during the 48-Hour Reporting Period. The two unreported loans totaled $219,507.47 and both contributions should have been reported within forty-eight hours of their receipt by the Committee.

On September 18, 2002, Defendant found reason to believe that Plaintiffs had violated 2 U.S.C. § 434(a)(6)(A) for failing to timely report three contributions of $1,000.00 or more, totaling $224,507.47, received during the 48-Hour Reporting Period. Defendant also made a preliminary determination that the civil money penalty for these three violations was $22,750.00 based on the Schedule. On September 19, 2002, Defendant notified Plaintiffs of Defendant's finding and the civil money penalty calculated at $22,750.00.

Plaintiffs submitted a response to the September 18, 2002 finding which was received by Defendant on October 28, 2002. In summary, Plaintiffs conceded that the March 5, 2002 and March 12, 2002 loans should have been reported within forty-eight hours of their receipt and that the Committee had failed to do so. Although the two loans were not reported in a timely fashion, Plaintiffs argued: (1) Cox had announced his intention to make the loans prior to doing so; (2) the loans were subsequently disclosed in the Committee's post-election April 2002 Quarterly Report; (3) both loans were from the candidate himself; (4) the omissions were inadvertent; and (5) a campaign staff member's apartment fire and the payment of the March 12, 2002 loan by wire transfer contributed to the oversights. However, Plaintiffs did not contend that there were extraordinary circumstances within the meaning of 11 C.F.R. § 111.35(b) to excuse their failure to report the loans

in a timely fashion; instead, Plaintiffs admitted that the factual circumstances surrounding the March 5, 2002 and March 12, 2002 loans may not strictly constitute extraordinary circumstances that would excuse their violations.

On October 29, 2002, the matter was referred to Defendant's Office of Administrative Review. After reviewing Defendant's initial finding and Plaintiffs' response, the Office of Administrative Review issued its recommendation to Defendant on March 27, 2003. After determining that a $5,000.00 contribution (one of the three contributions originally at issue) from a political action committee was not made during the 48-Hour Reporting Period, the Office of Administrative Review recommended reducing the amount of the civil money penalty from $22,750.00 to $22,150.00. In arriving at that sum, the Schedule was applied. However, the Office of Administrative Review rejected the remainder of Plaintiffs' arguments, finding that (1) Warren had previously filed reports for contributions received during the 48-Hour Reporting Period in a prior congressional race and was, therefore, aware that candidate loans must also be reported, (2) a fire in the apartment of a campaign staff member other than Warren did not constitute an extraordinary circumstance within the meaning of 11 C.F.R. § 111.35(b), (3) Cox was both the candidate and the Committee's Treasurer which made him personally responsible for reporting his own loans, (4) Cox's public statement that he would contribute money to his own campaign did not override his duty to report the March 5, 2002 and March 12, 2002 loans during the 48-Hour Reporting Period, and (5) reporting the contributions in the post-election April 2002 Quarterly Report was not a substitute for reporting the contributions within forty-eight hours of receipt of the same.

Plaintiffs were notified of the Office of Administrative Review's recommendation on March 31, 2003. On April 10, 2003, Plaintiffs responded to the recommendation with a number

of new arguments, including constitutional challenges to the Schedule. After receiving Plaintiffs'

April 10, 2003 response, the Office of Administrative Review made a final recommendation on April

14, 2003 that a civil money penalty of $22,150.00 should be assessed. A copy of Plaintiffs' April

10, 2003 response was attached to the final recommendation.

On April 29, 2003, Defendant adopted the Office of Administrative Review's

recommendation, made a final determination that Plaintiffs violated 2 U.S.C. § 434(a)(6)(A), and

assessed a civil money penalty of $22,150.00. Defendant notified Plaintiffs of its final determination

and the $22,150.00 civil penalty on April 30, 2003. Plaintiffs subsequently filed their complaint on

May 30, 2003.

<em>Legal Issues and Analysis</em>

The parties' cross-motions for summary judgment essentially present four disputed

legal issues. In the interest of judicial economy, the Court will address all of the parties' arguments

related to each issue at the same time.

**I.      Defendant's Decision to Assess a Civil Money Penalty in the Amount of $22,150.00 was in Accordance with Law and Not Arbitrary, Capricious, Irrational, or an Abuse of Discretion.**

Both parties concede that the standard of judicial review applicable to Defendant's

administrative decision is provided by the Administrative Procedure Act.[3] As stated therein, this

Court will review Defendant's decision "to determine whether the decision was 'arbitrary,

---

[3] *See also Becker v. Fed. Election Comm'n*, 230 F.3d 381, 384 (1st Cir. 2000) ("Because the FECA itself has no provisions governing judicial review of FEC regulations, the judicial review procedures of the Administrative Procedure Act...apply to a facial challenge to the FECA's implementing regulations.") (citations omitted); *Perot v. Fed. Election Comm'n*, 97 F.3d 553, 560 (D.C. Cir. 1996) ("The FECA has no provisions governing judicial review of regulations, so an action challenging its implementing regulations should be brought under the judicial review provisions of the Administrative Procedure Act....").

capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Smith v. Office of Civilian Health & Med. Program of the Uniformed Servs.*, 97 F.3d 950, 954 (7th Cir. 1996) (citations omitted); *Pozzie v. United States Dep't of Hous. & Urban Dev.*, 48 F.3d 1026, 1029 (7th Cir. 1995). This determination requires the Court to "'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Smith*, 97 F.3d at 955 (citation omitted); *Pozzie*, 48 F.3d at 1029.

However, courts are cautioned that they "must guard against substituting [their] own judgment for that of the agency." *Smith*, 97 F.3d at 955 (citations omitted); *see also Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37 (1981) ("[T]he Commission is precisely the type of agency to which deference should presumptively be afforded."). Indeed, the "'arbitrary or capricious' standard of review is a deferential one which presumes that agency actions are valid as long as the decision is supported by a 'rational basis.'" *Pozzie*, 48 F.3d at 1029 (citations omitted); *see also Federal Election Comm'n v. Nat'l Rifle Ass'n of Am.*, 254 F.3d 173, 182 (D.C. Cir. 2001) ("We review the Commission's interpretation of its own regulations pursuant to 'an exceedingly deferential standard.'") (citation omitted). Here, Plaintiffs bear the burden of proving that Defendant's administrative decision lacks such support. *Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir. 1995).

A. **The Record Indicates that Defendant's Assessment of a Civil Money Penalty was Not Arbitrary, Capricious, Irrational, or an Abuse of Discretion and was in Accordance with Law.**

The factual record before this Court establishes that Defendant considered Plaintiffs' mitigating factors, including the apartment fire and confusion surrounding the wire transfer, before reaching its decision. Because all of the relevant factors were considered, Plaintiffs must make the

very difficult showing that Defendant's decision lacked any rational basis and, therefore, constituted a clear error of judgment. *See Smith*, 97 F.3d at 955; *Pozzie*, 48 F.3d at 1029; *Sierra Club*, 46 F.3d at 619. However, Plaintiffs point to no facts and offer no authority that would suggest that such an error was committed.

Plaintiffs concede that (1) they failed to report the March 5, 2002 and March 12, 2002 loans during the 48-Hour Reporting Period in violation of 2 U.S.C. § 434(a)(6)(A) and (2) their defenses are not recognized by the applicable regulation. 11 C.F.R. § 111.35(b)(1) permits Plaintiffs to challenge the civil money penalty assessed against them only on the basis of

> (i) [t]he existence of factual errors; and/or (ii) [t]he improper calculation of the civil money penalty; and/or (iii) [t]he existence of extraordinary circumstances that were beyond the control of [Plaintiffs] and that were for a duration of at least 48 hours and that prevented [Plaintiffs] from filing the report in a timely manner....

11 C.F.R. § 111.35(b)(1). The regulation adds that "[e]xamples of circumstances that will not be considered extraordinary include, but are not limited to, the following: (i) [n]egligence;...(iii) [i]llness, inexperience, or unavailability of staff, including the treasurer;...and (v) [o]ther similar circumstances." 11 C.F.R. § 111.35(b)(4). This Court agrees with the parties that Plaintiffs' mitigating factors do not qualify as "extraordinary circumstances." Plaintiffs also concede that Defendant did not deviate from the Schedule or disregard any fact that would mandate a downward departure from the fine prescribed by 11 C.F.R. § 111.44. *See* 2 U.S.C. § 437g(a)(4)(C); 11 C.F.R. § 111.44.

Despite these concessions, Plaintiffs steadfastly maintain that a strict application of the Schedule is unreasonable in light of, *inter alia*, (1) the fact that Plaintiffs' violations were inadvertent, (2) Plaintiffs' history of compliance with the FECA disclosure requirements, (3) the

severity of the resulting fine, and (4) the factual circumstances surrounding each violation. However, each of these arguments was considered by Defendant during the underlying administrative proceedings. Hence, Plaintiffs, in effect, are asking this Court to exercise its own judgment and rehear Plaintiffs' administrative appeal. This is precisely the type of second-guessing that this Court must avoid. *See Democratic Senatorial Campaign Comm.*, 454 U.S. at 37; *Smith*, 97 F.3d at 955. Since the record is clear that the relevant factors were considered and the applicable regulations were strictly applied to Plaintiffs' violations, the Court concludes that the decision to assess a civil fine of $22,150.00 is supported by a rational basis and does not indicate a clear error of judgment. In light of that conclusion, further analysis is neither required, nor permitted.

**B.    Plaintiffs' Policy Arguments Do Not Establish that Defendant's Assessment of a Civil Money Penalty was Arbitrary, Capricious, Irrational, or an Abuse of Discretion or Out of Accordance with Law.**

Plaintiffs' policy arguments are unpersuasive. Initially, Plaintiffs' argue that no harm resulted from their failure to timely report the March 5, 2002 and March 12, 2002 loans because Cox had publicly stated on several occasions that he had pledged one million dollars of his own funds to his campaign. However, campaign promises do not adequately safeguard the important governmental interests that contribution disclosure requirements protect. The United States Supreme Court has stated that disclosure and reporting requirements further at least three "substantial governmental interests:"

(1) "[D]isclosure provides the electorate with information 'as to where political campaign money comes from and how it is spent by the candidate' in order to aid the voters in evaluating those who seek federal office[;]"

(2) "[D]isclosure requirements deter actual corruption and avoid the appearance of corruption by exposing large contributions and

expenditures to the light of publicity....A public armed with information about a candidate's most generous supporters is better able to detect any post-election special favors that may be given in return[;] and

(3) "[R]ecordkeeping, reporting, and disclosure requirements are an essential means of gathering the data necessary to detect violations of the contribution limitations...."

*Buckley v. Valeo*, 424 U.S. 1, 66-68 (1976) (citations omitted). Because Plaintiffs failed to report the March 5, 2002 and March 12, 2002 loans during the 48-Hour Reporting Period (and prior to the primary election), Plaintiffs undermined "substantial governmental interests" that the disclosure requirements protect. *See also Federal Election Comm'n v. Toledano*, 317 F.3d 939, 953 (9th Cir. 2003) ("Public harm can be presumed 'from the magnitude or seriousness of the violation' of the FECA.") (citation omitted); *Federal Election Comm'n v. Furgatch*, 869 F.2d 1256, 1259 (9th Cir. 1989) ("The importance of the FECA's reporting and disclosure provisions, and the difficulty of proving that violations of them actually deprived the public of information, justify a rule allowing a district court to presume harm to the public from the magnitude or seriousness of the violation of these provisions.") (citations omitted). Plaintiffs' self-serving campaign promises do nothing to change that fact. Indeed, campaign promises concerning future contributions provide no guarantee that (1) the pledged contributions will actually be made, (2) the pledged contributions will ultimately be derived from the stated funding sources, or (3) the public will be able to accurately ascertain prior to an election which candidates are incurring sizable obligations that may be discharged with the generosity of unidentified parties after the election.

Second, Plaintiffs cite to *Smith v. Metro. Sch. Dist. Perry T'ship*, 128 F.3d 1014 (7th Cir. 1997) in arguing that Defendant inappropriately applied a strict liability standard when assessing

the civil money penalty.[4] Plaintiffs' argument is not well-taken. *Smith* discussed strict liability in the context of Title IX and Spending Clause legislation and provides no guidance as to whether a strict liability standard may be applied in the context of the FECA. *Id.* at 1016-18, 1029-31. Moreover, Plaintiffs fail to explain how *Smith* is applicable to the instant action, or supply any additional authority for their position. Lacking a compelling reason to find that imposition of a strict liability standard constituted a clear lack of judgment, this Court will defer to Defendant's interpretation of its regulations. *See Democratic Senatorial Campaign Comm.*, 454 U.S. at 37; *Nat'l Rifle Ass'n*, 254 F.3d at 182; *Smith*, 97 F.3d at 955; *Pozzie*, 48 F.3d at 1029. Deference is also appropriate, here, because 2 U.S.C. § 437g(a)(4)(C)(i)(II) permits Defendant to "take[] into account...such other factors as [Defendant] considers appropriate" when formulating a schedule of penalties. 2 U.S.C. § 437g(a)(4)(C)(i)(II). Indeed, Defendant has been given great latitude with respect to the Schedule.

Next, Plaintiffs argue that 11 C.F.R. § 111.35(b)(1) & (b)(4) employ an arbitrary and subjective standard from which to impose civil penalties for violations of the 48-Hour Reporting Period. For the following reasons, the Court disagrees. First, Plaintiffs cite no authority to support their position. This absence of authority is magnified, here, because 2 U.S.C. § 437g(a)(4)(C)(i)(II) permits Defendant to establish a schedule of penalties for violations of 2 U.S.C. § 434(a) "which takes into account the amount of the violation involved, the existence of previous violations by the person, and such other factors" that Defendant "considers appropriate." 2 U.S.C. § 437g(a)(4)(C)(i)(II). The Schedule is quite consistent with 2 U.S.C. § 437g(a)(4)(C)(i)(II), a fact that

---

[4]It is worth mentioning that the Schedule hardly imposes strict liability in the traditional sense of the standard. For example, 11 C.F.R. § 111.35(b)(1) requires Defendant to consider "extraordinary circumstances" when assessing civil money penalties.

suggests the Schedule is far from arbitrary or subjective. Second, Plaintiffs' argument that Defendant applied a strict liability standard when evaluating Plaintiffs' violations of 2 U.S.C. § 434(a) belies its position that 11 C.F.R. § 111.35(b)(1) & (b)(4) are wholly subjective in nature. Third, the record offers no evidence that Plaintiffs' failure to timely report the March 5, 2002 and March 12, 2002 loans was in any way caused by Plaintiffs' inability to determine in advance whether their mitigating circumstances would act to excuse their violations.

Finally, this Court declines to adopt Plaintiffs' bald assertion that assessment of the $22,150.00 civil money penalty created "no incentive" for Plaintiffs to subsequently report the March 5, 2002 and March 12, 2002 loans in their April 2002 Quarterly Report. As an initial matter, the reporting requirements in effect during the 48-Hour Reporting Period are "in addition to all other reporting requirements...." 2 U.S.C. § 434(a)(6)(E). Therefore, a party's duty to timely report contributions in its Quarterly Report exists regardless of whether those same contributions were timely reported during the 48-Hour Reporting Period. Furthermore, this Court will not advocate excusing or reducing the penalties for violations of 2 U.S.C. § 434(a)(6)(A) simply because a party has chosen to lawfully comply with other disclosure requirements.

## II.    The Schedule Does Not Impose a Form of Criminal Punishment.

Plaintiffs argue that the sanctions imposed by the Schedule are "so severe that [they] transform[] the sanction[s] into...criminal penalt[ies]." Plaintiffs continue that this transformation renders the Schedule unconstitutional because the penalties set forth therein "constitute criminal punishment without the safeguards afforded an accused under the Fifth and Sixth Amendments." The Court declines to adopt Plaintiffs' position.

In order to determine whether the penalties imposed by the Schedule are civil or

14

criminal in nature, the Court must first "determine whether the legislature 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.'" *LaCrosse v. Commodity Futures Trading Comm'n*, 137 F.3d 925, 930 (7th Cir. 1998) (citation and internal quotation marks omitted). "It is widely-recognized that the fact that Congress makes a statute enforceable by an administrative agency 'is prima facie evidence that Congress intended to provide for a civil sanction.'" *Turner v. Glickman*, 207 F.3d 419, 429 (7th Cir. 2000) (citations omitted). Such evidence exists here since 2 U.S.C. § 434(a)(6)(A) is enforced by Defendant. Moreover, the penalties prescribed by the Schedule were expressly classified as civil. *See* 2 U.S.C. § 437g(a)(4)(C)(i)(II) ("*civil money penalty* in an amount determined under a schedule of penalties which is established...by [Defendant]") (emphasis added). Both of these facts lead to the conclusion that the Schedule should be construed as civil. However, it would be premature for the Court to end its analysis here.

"Even if the legislature intended to create a civil penalty, the penalty may still be 'criminal'" in nature or application. *LaCrosse*, 137 F.3d at 930. Therefore, the Court must also "determine 'whether the statutory scheme was so punitive either in purpose or effect'...to convert the intended civil penalty into a criminal one." *Id.* (citation and internal quotation marks omitted). When making this determination, seven factors must be considered:

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment – retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.

15

*Id.* (citation omitted). Additionally, courts are cautioned that "these factors should be applied to the statute on its face, and 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* (citation and internal quotation marks omitted).

With respect to 11 C.F.R. § 111.44, Plaintiffs fail to provide such clear proof. Initially, it should noted that Plaintiffs make almost no attempt to show how application of the aforementioned factors establishes that the Schedule imposes criminal penalties. Instead, Plaintiffs choose to summarily state that "[n]one of the seven...is dispositive in this analysis." Contrary to Plaintiffs' cursory statement, this Court finds the Schedule's penalties to be civil in construction, nature, and application.

### A. No Significant Affirmative Disability or Restraint is Created

This factor is of minimal importance because the civil fine in this case places no significant affirmative disability or restraint on Plaintiffs. Although Plaintiffs' violations of 2 U.S.C. § 434(a)(6)(A) could potentially lead to increased future fines if Plaintiffs engage in recidivist behavior (*see* 11 C.F.R. § 111.44(a)(2)), the only disability or restraint that could possibly be imposed is a higher fine, not any restriction on Plaintiffs' future behavior.

### B. Civil Fines are Not Historically Regarded as Punishment

Neither party argues that civil fines have been historically regarded as punishment. *See also LaCrosse*, 137 F.3d at 931 ("'neither money penalties nor debarment have historically been viewed as punishment'") (citation omitted).

### C. Finding of *Scienter* is Not Required

No finding of *scienter* is required under 2 U.S.C. § 434(a)(6)(A), 2 U.S.C. §

437g(a)(4)(C), or 11 C.F.R. § 111.44.  *See* 2 U.S.C. § 434(a)(6)(A); 2 U.S.C. § 437g(a)(4)(C); 11 C.F.R. § 111.44.

**D.     No Promotion of Traditional Aims of Punishment Such That Sanction is Penal in Nature**

Although the Schedule may have a deterrence effect, Plaintiffs fail to establish that this effect renders the schedule penal in nature.  *See Hudson v. United States*, 522 U.S. 93, 105 (1997) ("[W]e recognize that the imposition of...money penalties...will deter others from emulating petitioners' conduct, a traditional goal of criminal punishment.  But the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence 'may serve civil as well as criminal goals.'") (citations omitted).

**E.     Behavior is Not Already a Crime**

The fact that 2 U.S.C. § 437g(d) provides separate, criminal penalties for knowing and willful violations of 2 U.S.C. § 434(a) suggests that the Schedule is directed to civil behavior for which a finding of *scienter* is not required.  *Compare* 2 U.S.C. § 437g(a)(4)(C) *with* 2 U.S.C. § 437g(d); *see also Sequoia Books, Inc. v. Ingemunson*, 901 F.2d 630, 640 n.10 (7th Cir. 1990) ("the existence of 'two separate and distinct provisions imposing sanctions' for the same offense, one of which is 'obviously a criminal one,' may suggest that the other sanction is civil") (citation omitted).

**F.     Alternative Purpose is Assignable and Sanction is Not Excessive in Relation to the Same**

"[A]lternative purpose" refers to "a purpose other than a punitive purpose...."  *LaCrosse*, 137 F.3d at 932. Here, 2 U.S.C. § 434(a)(6)(A), 2 U.S.C. § 437g(a)(4)(C), and 11 C.F.R. § 111.44 are directed to the protection of "substantial governmental interests" related to the pre-election disclosure of campaign contributions. *See Buckley*, 424 U.S. at 66-68. Thus, an alternative

purpose is clearly assignable.

Defendant was vested with the authority to formulate a schedule of civil money penalties that would further this alternative purpose. *See* 2 U.S.C. § 437g(a)(4)(C). A review of the Schedule reveals that it incorporates the factors identified in 2 U.S.C. § 437g(a)(4)(C). *Compare* 2 U.S.C. § 437g(a)(4)(C) *with* 11 C.F.R. § 111.44. Because Plaintiffs concede that (1) they violated 2 U.S.C. § 434(a)(6)(A) and (2) Defendant strictly applied the relevant statutes and regulations when assessing a civil money penalty for those violations, the $22,150.00 penalty was not excessive in light of the important alternative purpose identified above.

Plaintiffs attempt to get around this conclusion by arguing that the sanctions imposed under 11 C.F.R. § 111.44 are unreasonable and excessive because they are "based solely on the amount of the contribution not reported or reported late...." That is simply not the case. The regulation takes into account not only the amount of the contribution not timely reported, but also the existence of previous violations. *See* 11 C.F.R. § 111.44(a)(2). These are precisely the factors that Congress asked Defendant to consider when formulating the Schedule. *See* 2 U.S.C. § 437g(a)(4)(C)(i)(II). Furthermore, it makes sense that timely, pre-election disclosure of contributions becomes more important as the amount of indebtedness or the size of the contribution increases. Indeed, a candidate may be more beholden to a large contributor or more likely to seek post-election contributions to satisfy significant, campaign-related debt. On the other hand, Plaintiffs never explain why it is inappropriate to formulate a schedule of penalties using these factors or why the sanctions are excessive in light of the important governmental interests protected by the Schedule.

Plaintiffs also argue that "the amount of the penalty is unrelated to the conduct that the sanction is intended to deter." In support, Plaintiffs boldly claim that the "penalty provisions are

18

really intended to severely punish violators, even on highly technical grounds, not encourage compliance." This argument does not make sense. If anything, strong sanctions would likely encourage compliance. Furthermore, it is irrelevant that the March 5, 2002 and March 12, 2002 loans would not have been subject to civil penalties had they been made prior to the 48-Hour Reporting Period. Plaintiffs were well-aware of the heightened reporting requirements imposed during the 48-Hour Reporting Period, and, more importantly, have been unable to convince this Court that these special requirements were not necessary to protect the "substantial governmental interests" at issue in this case.

### III. The Schedule Does Not Violate Substantive Due Process or the Equal Protection Clause of the Fifth Amendment

#### A. Due Process

Plaintiffs argue that "imposition of a substantial fine for a non-reporting violation, which [sic] based solely on the amount of the contribution and when it was made, is a deprivation of property without due process of law." Although this argument appears to concern procedural due process rights, Plaintiffs indicate that they are challenging the Schedule on substantive due process grounds. This Court does not find the Schedule to be unconstitutional on the basis of either position.

##### 1. Substantive Due Process

As an initial matter, Plaintiffs do not claim that any fundamental liberty interest is threatened by the Schedule. It is well-established that "the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Khan v. Gallitano*, 180 F.3d 829, 833 (7th Cir. 1999) (citation

omitted); *see also Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) ("[I]n addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the rights to marry,...to have children,...to direct the education and upbringing of one's children,...to marital privacy,...to use contraception,...to bodily integrity,...and to abortion....") (citations omitted). Accordingly, a court should be "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Glucksberg*, 521 U.S. at 720 (citation omitted). Because Plaintiffs do not expressly state that any fundamental right or liberty is threatened by the Schedule, Plaintiffs are not entitled to relief under the substantive due process clause. *See Khan*, 180 F.3d at 834 ("[Plaintiff] must show not merely that the defendants injured her in some legal sense but that they deprived her of a liberty deeply rooted in our history and tradition.").

   Plaintiffs do, however, argue (without further explanation or citation to authority) that application of the Schedule in this case resulted in a "deprivation of property without due process of law." While it may be true that "[a] substantive due process claim can be brought in the context of property interests[,]...[o]ne prerequisite for a cognizable claim...is an underlying constitutionally protected property interest." *Swartz v. Scruton*, 964 F.2d 607, 609 (7th Cir. 1992) (citations omitted); *see also Thornton v. Barnes*, 890 F.2d 1380, 1386 (7th Cir. 1989) ("Property interests, of course, are not created by the Constitution.") (citation omitted). Additionally, Plaintiffs "'must also show either a separate constitutional violation or the inadequacy of state law remedies.'"[5] *New Burnham Prairie*

---

[5]At least one commentator has argued that the "substantive due process doctrine should be extended to fully protect fundamental property rights...." Ronald J. Krotoszynski, *Fundamental Property Rights*, 85 GEO. L.J. 555, 560 (1997). However, Krotoszynski concedes that "[t]he Seventh Circuit simply has refused to recognize the existence of substantive due

*Homes, Inc. v. Vill. of Burnham*, 910 F.2d 1474, 1481 (7th Cir. 1990) (citations omitted). Here, Plaintiffs do not explain how the money required to satisfy the civil penalty assessed by Defendant constitutes or relates in any way to "an underlying constitutionally protected property interest." Furthermore, Plaintiffs have not established any separate constitutional violation or alleged the inadequacy of state law remedies.

Finally, even if the Court were to assume that Plaintiffs' vague "deprivation of property" claim constitutes the assertion of a fundamental liberty interest, Plaintiffs' substantive due process claim would still fail because Plaintiffs have not established that the Schedule is not "narrowly tailored to serve a compelling state interest." *Glucksberg*, 521 U.S. at 721 (citation omitted). 2 U.S.C. § 434(a)(6)(A) and 11 C.F.R. § 111.44 are narrowly tailored in that they only require Plaintiffs to report contributions within forty-eight hours of receipt of the same during the limited 48-Hour Reporting Period. Although Plaintiffs were assessed a civil money penalty for failing to comply with 2 U.S.C. § 434(a)(6)(A), their campaign activities and/or ability to run for public office were in no way limited. Furthermore, the disclosure requirements and accompanying Schedule, as previously noted, serve to further "substantial governmental interests." *See also cf. Buckley*, 424 U.S. at 64-68 ("But we have acknowledged that there are governmental interests sufficiently important to outweigh the possibility of infringement [on the exercise of First Amendment rights], particularly when the 'free functioning of our national institutions' is involved....The governmental interests sought to be vindicated by the disclosure requirements are of this magnitude.") (citation omitted). Accordingly, the Court is loathe to declare the Schedule to

---

process protection for property interests; such claims are cognizable only when coupled with another substantive right, such as a takings claim...." *Id.* at 580-81.

be unconstitutional on substantive due process grounds.

### 2. Procedural Due Process

The record does not indicate (nor do Plaintiffs argue) that Plaintiffs' procedural due process rights were violated during the underlying administrative proceedings. "A procedural due process claim requires two principal inquiries: first, whether the plaintiff was deprived of a protected property or liberty interest, and second, whether the plaintiff was deprived of that interest without sufficient procedural protections." *Galdikas v. Fagan*, 342 F.3d 684, 691 (7th Cir. 2003) (citation omitted). Although it may be true that "property is 'a legitimate claim of entitlement'" for purposes of procedural due process (*id.* at 691-92 (citation omitted)), the record does not establish that Defendant's administrative procedures failed to afford "sufficient procedural protections" to Plaintiffs prior to imposition of the civil money penalty. Indeed, both parties concede that (1) the applicable statute and regulations were strictly applied, (2) Plaintiffs were permitted to argue their mitigating factual circumstances, and (3) Plaintiffs were allowed to appeal Defendant's September 18, 2002 initial finding that Plaintiffs had violated 2 U.S.C. § 434(a)(6)(A). Furthermore, Plaintiffs do not cite to any authority that suggests that 2 U.S.C. § 434(a)(6)(A), 2 U.S.C. § 437g(a)(4)(C), and/or 11 C.F.R. § 111.44 operate to violate procedural due process rights. The fact that Plaintiffs are unhappy with the results of Defendant's administrative proceedings is not a sufficient basis from which to conclude that they were denied procedural due process.

### B. Equal Protection

Plaintiffs argue that "the penalty provisions...treat committees differently in a manner unrelated to [their] purpose....Such a result is irrational and violative of the Fifth Amendment's Equal Protection Clause." At the heart of Plaintiffs' position lies the suggestion that "a committee

that repeatedly violates the...requirements over a brief period of time by not reporting numerous contributions may receive a penalty substantially less than a committee that makes a single mistake simply because the latter failed to report one large contribution." These bald allegations do not suffice to render 2 U.S.C. § 434(a)(6)(A), 2 U.S.C. § 437g(a)(4)(C), and/or 11 C.F.R. § 111.44 unconstitutional on equal protection grounds.

Plaintiffs have not established that the Schedule creates classifications subject to equal protection analysis. It is well-established that the "guarantee of equal protection under the Fifth Amendment is not a source of substantive rights or liberties, but rather a right to be free from invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae*, 448 U.S. 297, 322 (1980). However, Plaintiffs make no suggestion that the disclosure requirements differ among campaign committees. Nor could they. *See* 2 U.S.C. § 434(a)(6)(A). Furthermore, Plaintiffs offer no evidence to suggest that campaign committees are classified and/or treated differently upon application of 11 C.F.R. § 111.44. In fact, Plaintiffs never establish that campaign committees can even be generally classified based on the type and size of contributions they receive. This is especially problematic for Plaintiffs because 11 C.F.R. § 111.44 is facially neutral. *See* 11 C.F.R. § 111.44. Instead, Plaintiffs argue that the operation of 11 C.F.R. § 111.44 allows for the possibility of disparate treatment among campaign committees.

Even if this Court were to ignore that the existence of a classification scheme has not been established, the Schedule would survive equal protection analysis. First, Plaintiffs fail to show that they have suffered invidious discrimination or disparate treatment through Defendant's assessment of a civil money penalty. Again, Plaintiffs argue that "a committee that repeatedly violates the...requirements over a brief period of time by not reporting numerous contributions may

receive a penalty substantially less than a committee that makes a single mistake simply because the latter failed to report one large contribution." However, that argument is flawed. Plaintiffs failed to report two contributions totaling $219,507.47 and were assessed a civil penalty of $22,150.00. However, if Plaintiffs had failed to report 219 contributions of $1,000.00 (the minimum contribution reported during the 48-Hour Reporting Period) totaling $219,000.00 they would have been assessed a civil penalty of $43,800.00, a fine that is almost double the one that Plaintiffs actually received. *See* 11 C.F.R. § 111.44. And that is without including any recidivism penalty that may possibly apply.

Second, Plaintiffs' claim would fail even if they could somehow establish invidious discrimination or disparate treatment because Plaintiffs never show that such discrimination or treatment was purposeful. *See Harris*, 448 U.S. at 323 n.26 ("The equal protection component of the Fifth Amendment prohibits only purposeful discrimination..., and when a facially neutral federal statute is challenged on equal protection grounds, it is incumbent upon the challenger to prove that Congress 'selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.'") (citations and internal quotation marks omitted).

Finally, Plaintiffs fail to establish that the disclosure requirements and accompanying Schedule are not "rationally related to a legitimate governmental interest." *Id.* at 326. As previously noted, the Schedule protects "substantial governmental interests." *See Buckley*, 424 U.S. at 66-68. Moreover, it takes into account the factors that Congress asked Defendant to consider, including the amount of the contribution not timely reported and the existence of previous violations. *See* 2 U.S.C. § 437g(a)(4)(C)(i)(II); 11 C.F.R. § 111.44. The Schedule acts to encourage candidates to be open

and forthcoming with respect to pre-election campaign contributions. And again, it makes sense that timely, pre-election disclosure becomes more important as the amount of indebtedness or contribution size increases. Given that Plaintiffs present no persuasive argument or authority to the contrary, the Court is left to conclude that the Schedule would survive equal protection analysis.

## IV. The Schedule Does Not Violate the Eighth Amendment's Excessive Fines Clause.

The parties do not dispute that the Eighth Amendment's Excessive Fines Clause applies to the Schedule. An invocation of the Excessive Fines Clause requires this Court to apply a "'gross disproportionality' test to determine whether a fine is 'excessive....'" *Towers v. City of Chicago*, 173 F.3d 619, 624 (7th Cir. 1999) (citation omitted). That test requires "that '[t]he amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish....'" *Id.* (citation omitted). The Seventh Circuit has cautioned, however, that when applying the test "the proportionality determination must be made based on the facts of [the instant action]." *Id.* at 625 (citation omitted).

Neither party has cited to any authority discussing the Schedule in the context of the Excessive Fines Clause. Therefore, the Schedule was evaluated in light of the factors outlined in *Towers* to determine whether Plaintiffs have established that the civil money penalty is grossly disproportionate to Plaintiffs' violations of 2 U.S.C. § 434(a)(6)(A) such that the fine is unconstitutionally excessive.

The following factors were considered by the Court: (1) the gravity of Plaintiffs' violations, (2) Plaintiffs' level of culpability, (3) the harm caused by Plaintiffs' violations, and (4) a comparison of the fine to the gravity of Plaintiffs' violations. *Id.* at 625-26. After a careful examination, the Court concludes that the Schedule is not grossly disproportionate to the conduct

to which it applies. *See also Newell Recycling Co. v. United States Envtl. Prot. Agency*, 231 F.3d

204, 210 (5th Cir. 2000) ("No matter how excessive (in lay terms) an administrative fine may appear,

if the fine does not exceed the limits prescribed by the statute authorizing it, the fine does not violate

the Eighth Amendment.").

### A.    Gravity of Plaintiffs' Violations

Plaintiffs' violations consist of two incidents where Plaintiffs failed to disclose

campaign contributions received during the 48-Hour Reporting Period.   Although Plaintiffs

subsequently reported the contributions in their April 2002 Quarterly Report, this subsequent

reporting occurred after the primary election had already taken place.   Therefore, "substantial

governmental interests" furthered by 2 U.S.C. § 434(a)(6)(A) were subverted because Plaintiffs'

violations deprived the public of important pre-election information. *See Buckley*, 424 U.S. at 66-68.

### B.    Plaintiffs' Level of Culpability

While Plaintiffs' violations of the 48-Hour Reporting Period were inadvertent,

Plaintiffs were directly responsible for both violations.   And though the inadvertent nature of the

violations somewhat lowers Plaintiffs' level of culpability, negligence is specifically excluded as an

"extraordinary circumstance."   11 C.F.R. § 111.35(b)(4).   Plaintiffs were clearly aware of the

reporting requirements set forth in 2 U.S.C. § 434(a)(6)(A), but nevertheless failed to comply with

those requirements.   In light of the other factors to be considered by the Court, Plaintiffs'

inadvertence is an insufficient basis from which to find that the fine imposed in this case was

unconstitutionally excessive.

### C.    Harm Caused by Plaintiffs' Violations

Plaintiffs' subsequent reporting of the March 5, 2002 and March 12, 2002 loans in

their post-election April 2002 Quarterly Report did nothing to alleviate the harm caused by their violations. *See also Toledano*, 317 F.3d at 953; *Furgatch*, 869 F.2d at 1259. Indeed, Plaintiffs' failure to report the loans during the 48-Hour Reporting Period quite clearly subverted "substantial governmental interests" furthered by 2 U.S.C. § 434(a)(6)(A). *See Buckley*, 424 U.S. at 66-68. As discussed above, Plaintiffs' public campaign promises are not a substitute for formal and timely reporting.

**D.      Comparison of Fine to Gravity of Plaintiffs' Violations**

The Schedule is directly proportional to (1) the amount of the unreported contribution and (2) the existence of prior violations. Once again, it makes sense that timely, pre-election disclosure becomes more important as the amount of indebtedness or contribution size increases. Indeed, large contributions and/or significant indebtedness are of heightened interest because of the increased influence that such contributions or indebtedness may wield with a candidate. Moreover, Plaintiffs fail to adequately explain why the formula for computing sanctions employed by the Schedule is excessive in relation to the "substantial governmental interests" furthered by the disclosure requirements. *See id.* Instead, Plaintiffs simply complain that a $22,150.00 fine is excessive given the factual circumstances surrounding their violations.

Because the fine assessed against Plaintiffs does not deviate from the Schedule, Plaintiffs' unsupported complaints do not establish that the fine is unconstitutionally excessive so as to justify the extraordinary step of overruling the legislature in this instance. *See United States v. Bajakajian*, 524 U.S. 321, 336 (1998) ("judgments about the appropriate punishment for an offense belong in the first instance to the legislature") (citations omitted). While $22,150.00 is not an inconsequential sum, this Court has no reason to believe that Congress or Defendant failed to give

serious thought to the Schedule used to sanction violations of the 48-Hour Reporting Period. In fact, Congress specified the very factors that Defendant should consider when formulating the Schedule and the Schedule incorporates those factors. *Compare* 2 U.S.C. § 437g(a)(4)(C)(i)(II) *with* 11 C.F.R. § 111.44. Since Plaintiffs have not established that the sanctions embodied in the Schedule are not necessary to further the relevant governmental interests, this Court will refrain from rejecting the fine assessed against Plaintiffs.

**ORDERED:** Plaintiffs' Motion for Summary Judgment [14] is denied. Defendant's Motion for Summary Judgment [16] is granted. The parties will bear their own attorneys' fees and costs.

Judgment will be entered in favor of Defendant on Plaintiffs' Petition for Review of Defendant's Determination and Complaint for Declaratory and Injunctive Relief [1]. Judgment will be set forth on a separate document and entered in the civil docket. Fed. R. Civ. P. 58, 79(a).

DATED:   JAN 2 1 2004                    ENTER:

HON. GEORGE W. LINDBERG
United States District Judge